[No. G052016. Fourth Dist., Div. Three. Mar. 23, 2017.]

JAMES R. LINDSEY, as Trustee, etc., et al., Plaintiffs and Respondents, v. ALIEU B. M. CONTEH et al., Defendants and Appellants.

**1298**

### Counsel

Reed Smith, Margaret M. Grignon, Anne M. Grignon, Michael Gerst, Ilana R. Herscovitz, James L. Sanders, Stuart A. Shanus; Genga & Associates, John M. Genga and Khurram A. Nizami for Defendants and Appellants.

Handal & Associates, Anton N. Handal, Gabriel G. Hedrick, Lauren G. Kane; Newmeyer & Dillion and Thomas F. Newmeyer for Plaintiffs and Respondents.

### Opinion

**MOORE, Acting P. J.**—Characterized by the trial court as litigation in which "[m]oney does not appear to be an object to the parties and counsel," this case calls on us to consider the propriety of a discovery referee's order imposing $100,000 in discovery sanctions against defendants Alieu B. M. Conteh (Conteh), Odessa Capital Inc., Dominique Financial, Ltd., OOA ONE, LLC, and OOA TWO, LLC (collectively, defendants), for failure to comply with a prior discovery order. Defendants contend the referee, stipulated to by the parties to rule on all discovery-related matters, erred in imposing monetary sanctions due to both procedural and substantive defects. Among other things, they assert that defendants' "substantial compliance" with the prior discovery order, combined with Conteh's expressed willingness to sit for an additional deposition and produce additional documents, precluded the levying of any sanctions. They also claim the amount of sanctions is unjustified.

In the published portion of this opinion, we conclude that the referee's order, filed with the trial court, is appealable. The language of the reference, expressly made under Code of Civil Procedure section 638, subdivision (a),[1] and the actions of the parties, the referee and the court, indicate that the reference was a general reference, making the referee's order appealable once filed with the court.

In the unpublished portion, we address the merits of defendants' appeal and reject their challenges to the imposition and amount of monetary sanctions. Defendants conceded below that they failed to comply with the prior discovery order, and the referee did not abuse her discretion under the circumstances either in determining monetary sanctions were appropriate

---

[1] All further statutory references are to the Code of Civil Procedure unless specified otherwise.

despite Conteh's promises about his future actions, or in calculating the amount of appropriate sanctions.

I

## FACTS AND PROCEDURAL BACKGROUND

African Wireless, Inc. (African Wireless), is a Delaware corporation owned by a handful of shareholders. Conteh and his closely held business entity, Dominique Financial, Ltd., own approximately 70 percent of African Wireless shares. In addition to being a shareholder, Conteh is African Wireless's CEO and chairman of its board of directors. He has the power to nominate three of the five members of the African Wireless board. Plaintiffs James R. Lindsey, as trustee of the Lindsey Family Trust, William Buck Johns, Wymont Services, Ltd., and Marc van Antro (collectively, the minority shareholders) each hold between a 1 and 15 percent interest in African Wireless, and all but one acts as, or has a representative who acts as, a director of African Wireless.

African Wireless's principal place of business is designated as the City of Irvine, but the corporation has no operations, no sales and no employees. Its purpose is to act as a holding company, with its principal asset being a 60 percent interest in Congolese Wireless Network SPRL (Congolese Wireless). Congolese Wireless is a business entity organized under the laws of the Democratic Republic of Congo (the DRC). Its principal place of business is in Kinshasa, DRC, and all of its operations take place in the DRC. Beginning in 1990, Conteh served as manager of Congolese Wireless. With assistance from Conteh and a few politically connected and powerful citizens in the DRC, Congolese Wireless embarked on a joint venture with another company, Vodacom International Ltd. They created a new entity known as Vodacom Congo for the purpose of owning and operating a wireless telephone network in the DRC.

In late 2012, a Congolese criminal tribunal allegedly convicted Conteh of forgery, sentencing him to one year in jail. A warrant was supposedly issued for his immediate arrest following the rejection of all appeals in the case. Conteh chose to flee the country to avoid incarceration. Less than two years later, a Congolese commercial tribunal allegedly ruled against Conteh in a business lawsuit due to Conteh's criminal forgery conviction. That alleged ruling prohibited Conteh from (1) performing any acts in the name of, and on behalf of, Congolese Wireless and (2) representing Congolese Wireless within any of the management and administrative bodies of Vodacom Congo.

In August 2014, the minority shareholders filed this shareholder derivative action on behalf of African Wireless and against Conteh, as an individual, and various of his alleged investment entities that purportedly have ties to Congolese Wireless and African Wireless. The operative complaint alleges that over the course of nearly a decade, Conteh took various actions and engaged in transactions that were detrimental to African Wireless's interests and that usurped opportunities belonging to it. The causes of action include breach of fiduciary duty, unjust enrichment, and accounting and conversion, and among the relief sought is monetary damages, prejudgment interest, injunctive relief, declaratory relief and a constructive trust.

The minority shareholders sought a temporary restraining order (TRO) and a preliminary injunction to remove Conteh from his African Wireless director position and prohibit him from voting his shares in the corporation. The trial court denied the TRO request, but scheduled a preliminary injunction hearing. In preparation for the hearing, the parties initiated expedited discovery by way of interrogatories, deposition notices, and requests for admissions and production of documents. At this point, whatever was not already sour between the parties quickly turned such. The minority shareholders accused Conteh, as an individual and as the representative of the business entity defendants, of failing to produce a single document, refusing to confirm a deposition date and appear for a deposition, and unreasonably objecting to all discovery. In turn, defendants accused all or some of the minority shareholders of refusing to produce for deposition a party-affiliated witness, Jonathan Sandler (Sandler), producing a "shell" person most knowledgeable (PMK) for deposition, and failing to respond to interrogatories and document production requests.

After a variety of back and forth between the parties' counsel, the parties remained unable to agree on deposition schedules and locations, and each believed the other was continuing to fail to provide meaningful discovery responses. At the preliminary injunction hearing, the trial court briefly addressed discovery matters raised in the parties' preliminary injunction papers, expressing "disappointment in the utter inability of counsel to effectively meet and confer." Believing a discovery referee to be necessary, the court directed counsel to meet and confer to select one, but left the parties to work out the details.

Thereafter, the parties agreed upon a discovery referee and related details. They stipulated that the referee would have broad powers, including "the authority to set the date, time, and place for any hearings determined by the discovery referee to be necessary, to preside over hearings, to take evidence if the referee so determines, rule on discovery objections, discovery motions, and other requests made during the course of the hearing." The reference

order drafted by the parties, and issued by the trial court, indicated it was made pursuant to section 638, subdivision (a), and ordered that the parties' then pending discovery motions were to be heard and decided by the referee.

In January 2015, following a telephonic hearing and a review of the more than 1,000 pages submitted in conjunction with the then pending motions to compel, the discovery referee issued a 38-page detailed ruling and order. The referee ordered Conteh to attend a three-day deposition in South Africa on specified dates, and Sandler to attend a deposition in the same location on the two days prior to the start of Conteh's deposition. The parties stipulated that Conteh was the PMK for each of the business entity defendants, so his appearance would be both in his individual capacity and as PMK. As for documents, defendants were ordered to produce the documents listed in the deposition notices for Conteh and the business entity defendants on or before February 23, 2015—a date 10 days prior to Conteh's scheduled deposition— "at a time, place and manner agreed upon by counsel." Defendants were also ordered to provide certain verifications and privilege logs.

Defendants served their first document production and related responses on the agreed-upon date. Two days later, defendants' counsel produced an additional batch of documents without a proof of service.

Both Sandler's and Conteh's depositions took place in South Africa as ordered by the discovery referee, with Conteh's lasting the full three days for which it was scheduled. During the first day of Conteh's deposition, Conteh admitted that he did not produce certain requested documents even though he acknowledged their existence, and that he had not done a diligent search for all responsive documents "in [his] possession and control." He stated that additional documents were likely in his office in South Africa or in the DRC, and that the latter could be sent by his staff in the DRC.

Two days after Conteh's deposition concluded, the minority shareholders sent a motion to the discovery referee requesting that discovery sanctions be levied against Conteh and each of the business entity defendants for their alleged failure to comply with the portion of the referee's January 2015 order concerning document production. They requested terminating, evidentiary, contempt and monetary sanctions. Defendants opposed the sanctions motion.

Following a hearing, and taking into consideration all of the parties' arguments and evidence, the referee issued a detailed ruling, finding that Conteh had violated the January 2015 order in multiple ways. Based on her factual findings, the referee concluded that monetary sanctions were warranted, but other sanctions were not. She found the more than $130,000 requested by the minority shareholders to be excessive, and instead imposed $100,000 in sanctions.

The referee's sanctions order was filed with the trial court on May 20, 2015. Defendants timely appealed, limiting their appeal to the monetary sanctions aspect of the order.

## II

## DISCUSSION

### A. *Determining the Nature of the Reference*

██ An appeal of an order to pay monetary sanctions in an amount over $5,000 is an appealable order over which we have jurisdiction. (§ 904.1, subd. (a)(12); *Rail-Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 471 [54 Cal.Rptr.2d 713] (*Rail-Transport*).) Our review of the record raised a concern about whether the discovery referee's ruling from which defendants appeal is a qualifying "order" given that the trial court filed the ruling, but took no further action with respect to it. At our request, the parties provided additional briefing concerning the nature of the reference and the resulting implications on appealability.[2] We conclude, based on the language of the reference and the actions of the parties, the referee and the court, that the reference was a general reference, making the referee's order directly appealable without further action from the court.

██ The parties agree that if the reference to the referee was a "general" reference, the referee's sanctions ruling stands as one of the trial court and, thus, would be directly appealable. (§ 645 ["The decision of the referee appointed pursuant to Section 638 . . . may be excepted to and reviewed in like manner as if made by the court"]; see § 644, subd. (a); *Ellsworth v. Ellsworth* (1954) 42 Cal.2d 719, 722 [269 P.2d 3] (*Ellsworth*).) There is also agreement on the converse—if it was a "special" reference, the ruling is not appealable because the court did not take action to independently review and adopt it, in whole or in part. (§ 644, subd. (b); *Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436 [227 Cal.Rptr. 460] (*Aetna*).) The critical question is whether the reference is properly characterized as "general" or "special."

---

[2] In their supplemental briefing, the minority shareholders request that we take judicial notice of briefs submitted by the parties concerning a motion by the minority shareholders to strike defendants' answers based on a February 2016 ruling of the discovery referee. They also request that we take judicial notice of an April 22, 2016, trial court minute order ruling on that motion. We grant their request, but only as to the existence of the documents, not the truth of their contents. (*Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145–147 [14 Cal.Rptr.3d 109]; *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 473 [282 Cal.Rptr. 389].)

■ The Code of Civil Procedure provides for both general and special references. A general reference is an appointment to a referee made pursuant to section 638, subdivision (a), giving the referee authority "[t]o hear and determine *any or all* of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." (Italics added; see *Fredendall v. Shrader* (1920) 45 Cal.App. 719, 723 [188 P. 580]; *Kajima Engineering & Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1400–1401 [127 Cal.Rptr.2d 464]; *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521–1522 [76 Cal.Rptr.2d 322]; *Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1208 [62 Cal.Rptr.2d 766].) A special reference is an appointment to a referee made pursuant to section 638, subdivision (b), or section 639, giving the referee authority to perform certain specified tasks and report a recommendation back to the trial court for independent consideration and further action by the court. (§ 644, subd. (b); *Ellsworth, supra,* 42 Cal.2d at p. 722; *Ruisi, supra,* 53 Cal.App.4th at p. 1208; *Dynair Electronics, Inc. v. Video Cable, Inc.* (1976) 55 Cal.App.3d 11, 20 [127 Cal.Rptr. 268].) Although a special reference may be made with or without the consent of the parties, a general reference requires the parties' prior consent so as to avoid an unlawful delegation of judicial power. (§§ 638, 639; *Holt v. Kelly* (1978) 20 Cal.3d 560, 562 [143 Cal.Rptr. 625, 574 P.2d 441]; *Aetna, supra,* 182 Cal.App.3d at pp. 435–436.)

To determine the nature of the reference, we look not only to the language of the order of reference, but also to any recitals in the referee's ruling, the conduct of the parties and the subsequent actions of the trial court. (See *In re Estate of Hart* (1938) 11 Cal.2d 89 [77 P.2d 1082]; *Lewis v. Grunberg* (1928) 205 Cal. 158 [270 P. 181]; *Estate of Bassi* (1965) 234 Cal.App.2d 529, 539 [44 Cal.Rptr. 541].)

Here, the reference order derived from a "stipulation and request" of the parties and was submitted by them to the trial court in proposed form. It expressly states that the referee's appointment is made "pursuant to California Code of Civil Procedure Section 638(a)" and further specifies that the appointment is "as to all discovery matters for purposes of this action." The reference authorizes the referee to, among other things, set any hearings determined by the referee to be necessary, preside over the hearings, and "rule on discovery objections, discovery motions, and other requests made during the course of the hearing." And, within 20 days after the completion of any hearing, the referee is required to "submit a written decision to the parties and to the Court . . . , with findings and decisions thereon, including a decision for allocation of payment and any decision for the imposition of sanctions."

This language, and the explicit mention of section 638, subdivision (a), is indicative of a consensual general reference. The referee was not merely empowered to determine and report facts, and/or make a recommendation, and there is no provision for the trial court's subsequent involvement in rulings made by the referee. (See § 643, subd. (c); cf. *Dallman Co. v. Southern Heater Co.* (1968) 262 Cal.App.2d 582, 589–590 [68 Cal.Rptr. 873] [reference order authorizing referee to ascertain facts concerning existence and amount of damages for report back to court was special reference]; *Weavering v. Schneider* (1921) 52 Cal.App. 181, 183 [198 P. 418] [reference authorizing referee to examine and report information to court so that court could consider the issue was special reference].) Rather, the parties—with the court's approval—gave the referee the power to make "findings and decisions" and "rule on" all discovery matters, including requests for sanctions. (See also *Hihn v. Peck* (1866) 30 Cal. 280, 285 [reference order requiring referee to try the issues and report " 'his findings thereon' " was general, not special, reference].)

The general nature of the reference is underscored by the subsequent actions of the parties, the referee and the trial court. After the reference order was issued, the referee accepted further briefing and heard the parties' motions to compel that had originally been filed with the court. In the resulting ruling, which ordered the South Africa depositions of both Conteh and Sandler and the related document production, the referee stated at the outset that she was ordered to serve "pursuant to CCP section 638(a)" and that the parties had "stipulated that [she] was vested with the authority to rule on discovery motions and depositions at the request of a party." Thereafter, the parties acted as if the referee's ruling had binding effect without any further action by the court. And, when the ruling was sent to the court, the court filed it and took no other action. A similar sequence of events occurred with respect to the sanctions motion and ruling from which this appeal stems.

██ Because we conclude the reference was a general reference, the referee's sanctions ruling, filed with the trial court, "stand[s] as the decision of the court" and we have jurisdiction over the appeal. (§ 644, subd. (a); see §§ 645, 904.1, subd. (a)(12); *Rail-Transport, supra,* 46 Cal.App.4th at p. 471.)

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1296.

## III

## DISPOSITION

We affirm the order. Respondents are entitled to their costs on appeal.

Ikola, J., and Thompson, J., concurred.